Hilary Han (WSB #33754)
DOBRIN & HAN, PC
705 Second Avenue, Suite 905
Seattle, Washington 98104
(206) 448-3440

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Andrea Velasco Gomez, <br><br> Plaintiff, <br><br> v. <br><br> United States Citizenship and Immigration Services; <br> Loren K. Miller, Director, <br> USCIS Nebraska Service Center; <br> Ur M. Jaddou, Director, <br> United States Citizenship and Immigration Services; <br> Alejandro Mayorkas, Secretary, <br> Department of Homeland Security; <br><br> Defendants. | No. <br><br> Agency No. 208-533-350 <br><br><br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Through her undersigned attorney, Plaintiff Andrea Velasco Gomez ("Ms. Velasco"), as and for her complaint, alleges as follows:

**INTRODUCTION**

1. Ms. Velasco is a native and citizen of Mexico who has resided in the United States for more than 20 years. She is a single mother of a United States citizen son. Her father and two of her brothers are lawful permanent residents, and two other siblings are United States citizens.

2. Ms. Velasco was in a romantic relationship with a man named David Jesus Hernandez for about three years. During that time, the man was emotionally and physically abusive to Ms.

Velasco. Ms. Velasco reported his abuse to the police, and, as a result, he was convicted of two counts of violation of a domestic violence-related protection order.

3. Ms. Velasco subsequently filed an application for U nonimmigrant status with the United States Citizenship and Immigration Services ("USCIS") in December 2015. Her application was prepared by a non-attorney forms preparer in Bellingham, Washington. The forms preparer, who was referred to Ms. Velasco by an acquaintance, failed to submit significant evidence in support of Ms. Velasco's application.

4. In June 2020, the USCIS mailed a request for additional evidence in Ms. Velasco's case. The agency attempted to mail the document to the forms preparer. The document was returned to the USCIS as undeliverable. After Ms. Velasco predictably did not respond to the request for evidence, the USCIS denied her U visa application in November 2020. The USCIS had Ms. Velasco's mailing address on her U visa application but did not mail either the request for evidence or the denial letter to that address.

5. Ms. Velasco learned that her application had been denied after contacting an immigration attorney and obtaining a copy of her file pursuant to the Freedom of Information Act. Upon learning of the denial, she filed a motion to reopen her application with the USCIS Nebraska Service Center. With that motion, she explained that the request for evidence had been improperly sent to the forms preparer and that she had not learned of the denial of her application until a number of months after that decision. She also submitted evidence responsive to the request for evidence, establishing that she is eligible for U nonimmigrant status.

6. The Nebraska Service Center denied Ms. Velasco's motion to reopen on October 21, 2021. In its decision, it alleged that she had abandoned her U visa application and that she had failed to demonstrate that reopening was proper under the immigration regulations. The Service Center also "noted" that Ms. Velasco's signatures on her application were not originals and that the petition was filed outside the normal deadline for seeking reopening.

7. In this complaint, Ms. Velasco argues that the agency's decision violated the

immigration regulations and the United States Constitution. The Service Center was required by regulation to send the request for evidence to Ms. Velasco, but it did not. Moreover, the due process clause required the Service Center to provide notice that was reasonably calculated to apprize Ms. Velasco of the additional information needed in support of her application. The agency's failure to send the request for evidence to her – even when it knew that she was unaware of the request – violated the Constitution.

## JURISDICTION

8. Jurisdiction over the subject matter of this civil action is conferred on this Court by 28 U.S.C. § 1331, as a civil action arising under the Constitution, laws, or treaties of the United States; 5 U.S.C. § 702, as a challenge to agency action under the Administrative Procedures Act; and 28 U.S.C. §§ 2201 and 2202, as a civil action seeking a declaratory judgment.

## VENUE

9. Venue is properly in this district pursuant to 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States government, Ms. Velasco resides in Whatcom County, Washington, and no real property is involved in this action.

## STANDING

10. Ms. Velasco has standing to bring this action. Defendants have denied her motion to reopen the denial of her application for U nonimmigrant status. This Court has jurisdiction to redress that injury, by finding Defendants' decision to be a violation of the Administrative Procedures Act and/or the due process clause of the United States Constitution. 5 U.S.C. § 706; 28 U.S.C. § 2202. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982).

**PLAINTIFF**

11. Plaintiff Andrea Velasco Gomez is a native and citizen of Mexico who resides at 5122 Labounty Drive, Unit 109, Ferndale, Washington 98248. On November 13, 2020, Defendants denied her application for U nonimmigrant status. On October 21, 2021, Defendants denied her motion to reopen the denial of that application.

**DEFENDANTS**

12. Defendant United States Citizenship and Immigration Services ("the USCIS") is a subagency of the Department of Homeland Security ("the DHS"). The DHS is the federal agency that is responsible for the administration and enforcement of the Immigration and Nationality Act ("INA"). Within the DHS, the USCIS adjudicates affirmative applications for immigration benefits, including applications for U nonimmigrant status and motions to reopen and/or reconsider the denial of benefits applications. The USCIS denied Ms. Velasco's U visa application and her motion to reopen the denial of that application.

13. Defendant Loren K. Miller is, upon information and belief, the director of the USCIS Nebraska Service Center. As such, he has been delegated the duty of adjudicating certain applications for U nonimmigrant status. He also has the duty to adjudicate motions to reopen the denial of benefits applications denied by the Nebraska Service Center. Defendant Miller signed the decisions denying Ms. Velasco's application for U visa status and her motion to reopen that denial. Defendant Miller is sued herein in his official capacity.

14. Defendant Ur M. Jaddou is the USCIS Director. As such, she has been delegated the responsibility to oversee the adjudication of applications and petitions filed with the agency. In particular, she has the responsibility of overseeing the adjudication of U visa applications and motions to reopen the denial of those applications. Defendant Jaddou is sued herein in her official capacity.

15. Defendant Alejandro Mayorkas is the Secretary of the Department of Homeland

1 Security. As such, he is ultimately responsible for the adjudication of U visa applications and
2 motions to reopen the denial of those applications. Defendant Mayorkas is sued herein in his official
3 capacity.

## FACTS

16. A U nonimmigrant visa is available to certain non-citizens who have been victims of criminal activity in the United States. 8 U.S.C. § 1101(a)(15)(U); 8 U.S.C. § 1184(p). To qualify for this visa, the non-citizen must demonstrate, inter alia, that he or she: (1) has suffered substantial physical or mental abuse as a result of having been the victim of certain criminal activity; (2) possesses information about that criminal activity; and (3) has been helpful, is being helpful, or is likely to be helpful to law enforcement authorities investigating or prosecuting the criminal activity. 8 U.S.C. § 1101(a)(15)(U)(i). "Qualifying criminal activity" for U visa purposes encompasses a number of serious criminal offenses, including crimes involving domestic violence. 8 U.S.C. § 1101(a)(15)(U)(iii). A U visa is valid for four years; after a visa holder has maintained that status for three years, he or she can apply to adjust status to lawful permanent residence. 8 U.S.C. § 1184(p)(6); 8 U.S.C. § 1255(m).

17. An applicant for a U visa must file that application with the USCIS on form I-918. 8 C.F.R. § 214.14(c). Supplement B to form I-918 must be executed by a law enforcement official and must certify: (1) the nature of the criminal activity investigated or prosecuted; (2) that the applicant possesses information about the criminal activity; and (3) that the applicant has been, is being, or is likely to be helpful in the investigation or prosecution of that criminal activity. 8 C.F.R. § 214.14(c)(2). The applicant must provide evidence to demonstrate that he or she suffered substantial physical or mental abuse as a result of the criminal activity. Id. In addition, applicants who are inadmissible to the United States must submit an application for a waiver of inadmissibility. Id.

18. Ms. Velasco is a 43-year-old native and citizen of Mexico. She entered the United

States without inspection in July 1999 and has resided continuously in this country since that time. Most of her family is in this country; her father and two of her brothers are lawful permanent residents, and two other siblings are United States citizens.

19. Ms. Velasco is the single mother of a 17-year-old United States citizen son named D.B. D.B. is a high school student with significant special needs. Among other things, he is non-verbal, he generally uses a wheelchair, he is unable to use the bathroom on his own, and he has mild to moderate hearing loss. Ms. Velasco not only takes care of her son by herself, but she also works to support D.B. and herself. She has her own cleaning business, and she files her federal tax returns annually.

20. Ms. Velasco began a romantic relationship with a man named David Jesus Hernandez ("Mr. Hernandez") in 2007. Not long after their relationship started, Mr. Hernandez became very controlling, monitored whom she talked to and prohibiting her from talking to other men.

21. Ms. Velasco and Mr. Hernandez began living together in August 2007. About five months later, Mr. Hernandez called Ms. Velasco a prostitute. When Ms. Velasco asked why he said that, Mr. Hernandez grabbed her by the neck and threw her on the floor. After doing so, he apologized and was not physically abusive for a couple of years; however, he remained verbally and emotionally abusive, belittling Ms. Velasco in front of family and friends, breaking Ms. Velasco's belongings, and threatening to harm her physically.

22. In 2010, Mr. Hernandez began to abuse illicit drugs. Once this happened, his physical abuse began again. Mr. Hernandez hit Ms. Velasco, forced her to stay awake with him, and confined her within their home. On some occasions, he took away her phone and keys so she could not leave the house. Ms. Velasco often had bruises and scratches all over her arms, legs, and back. On a couple of occasions, Mr. Hernandez left visible injuries on her face. Mr. Hernandez also started to sell drugs and to carry a gun, and Ms. Velasco feared that he would kill her.

23. By December 2010, Ms. Velasco was so malnourished and exhausted that she did not recognize herself when she looked in the mirror. That month, Mr. Hernandez slapped her four times

across the face and blamed his drug use on Ms. Velasco. Ms. Velasco and her son left Mr. Hernandez and stayed with family members. However, about a month later, while Ms. Velasco was staying with her sister, Mr. Hernandez went to her sister's home and tried to get her to return. Ms. Velasco was fearful and sought a protection order in the Whatcom County Superior Court. A judge issued that order on March 23, 2011.

24. Subsequently, Mr. Hernandez violated that order on a number of occasions by breaking in to Ms. Velasco's apartment. Ms. Velasco reported these crimes to the police, and Mr. Hernandez was ultimately charged with a number of domestic violence-related criminal offenses: three counts of residential burglary, two counts of violation of a protection order, and fourth degree assault. He was ultimately convicted of two counts of violation of a protection order and an additional felony count of bail jumping. He was sentenced to 90 days in jail for each count and was ordered, inter alia, not to have contact with Ms. Velasco.

25. Mr. Hernandez's domestic violence greatly affected Ms. Velasco. For years, she had difficulty falling asleep because of her fear that Mr. Hernandez would show up at night. She cried often and was consumed by darkness. Ms. Velasco had to move out of her apartment because of the painful memories associated with it. Even now, although she has not seen Mr. Hernandez for many years, Ms. Velasco still feels that he is following her.

26. After Mr. Hernandez was prosecuted, Ms. Velasco became very close to the police detective who investigated the crimes against her. The detective mentioned that Ms. Velasco might be able to apply for a U visa. In November 2015, Ms. Velasco's acquaintance recommended that she contact a man named Michael Arens ("Mr. Arens"), who was known in the community as someone who helped non-citizens file applications with the immigration authorities. Ms. Velasco met with Mr. Arens. He asked her to provide certain documents, and he sat down with her to prepare application forms. Mr. Arens charged Ms. Velasco $1500 to prepare the application for her. Among the documents submitted with the application was a law enforcement certification from the Bellingham Police Department, confirming that Ms. Velasco was the victim of domestic violence

Complaint for Declaratory and
Injunctive Relief

7

Dobrin & Han, PC
705 Second Avenue, Suite 905
Seattle, WA 98104

related offenses and that she was helpful in the investigation of the crimes. Exhibit 1, Supplement B to Form I-918.

27. Ms. Velasco's U visa application was received by the USCIS Vermont Service Center on December 10, 2015. Exhibit 2, Form I-918. After the application was submitted, Mr. Arens told Ms. Velasco he would keep her updated on the status of her case. In February 2016, he called her to notify her of her biometrics appointment. Mr. Arens contacted her again in July 2019; he asked Ms. Velasco if she had heard anything from the immigration authorities, and Ms. Velasco said that she had not. He told her that he would keep her updated, but he never contacted her again.

28. In January 2021, Ms. Velasco attempted to reach out to Mr. Arens. His number was out of service, he was no longer at his office, and his website said he was out of business. According to his Linkedin page, Mr. Arens took a job for the state of Washington in December 2020. Because he had failed to contact Ms. Velasco to let her know this and because she could not find him, she reached out to undersigned counsel. Counsel was able to find a listed address for Mr. Arens online, and Ms. Velasco went in person to that address. She spoke to Mr. Arens's wife, who provided Mr. Arens's new phone number.

29. Ms. Velasco called Mr. Arens and asked him if he had any updates on her U visa application. He did not seem to know anything about Ms. Velasco's case, so she asked him to provide her a copy of her file. However, Mr. Arens did not have any copies of correspondence with USCIS; instead, he printed a copy of her U visa application off his computer. Ms. Velasco provided this documentation to counsel. Because Mr. Arens did not have documentation establishing the status of Ms. Velasco's case, counsel suggested that she request a copy of her file pursuant to the Freedom of Information Act. The file arrived on June 21, 2021, and Ms. Velasco learned for the first time that her U visa application had been denied.

30. Unbeknownst to Ms. Velasco, the USCIS Nebraska Service Center mailed a request for additional evidence on June 1, 2020. Exhibit 3, Request for Evidence. Instead of mailing it to Ms. Velasco, as required by the immigration regulations, the Service Center mailed the document

to Mr. Arens at the address he had provided when he prepared Ms. Velasco's application. That letter was returned to the USCIS as undeliverable. Exhibit 4, June 2020 returned envelope. On November 13, 2020, the Service Center denied Ms. Velasco's U visa application because she had not responded to the request for evidence. Exhbit 5, Denial letter. The denial decision was also mailed to Mr. Arens's former address and returned by the United States Postal Service as undeliverable. Exhibit 6, November 2020 returned envelope.

31. Also unbeknownst to Ms. Velasco, Mr. Arens had changed his address on two different occasions during the pendency of Ms. Velasco's application. In March 2018, he moved suites, from 203 W. Holly Street, Suite 207, to Suite 217. In January 2020, he moved to a new address – 436 ½ Baker Street, Bellingham, Washington 98225. Mr. Arens informed neither Ms. Velasco nor the USCIS of these address changes.

32. On September 10, 2021, Ms. Velasco filed a motion to reopen with the Nebraska Service Center. Exhibit 7, Receipt notice for motion to reopen. With that motion, she provided, inter alia: (1) proof that she never received the request for evidence; (2) proof that Mr. Arens was negligent in his handling of her application and that his negligence contributed to her delay in learning that her application had been denied; and (3) evidence responsive to the request for evidence, establishing that she is eligible for U nonimmigrant status and a waiver of inadmissibility.

33. On October 21, 2021, the Nebraska Service Center denied Ms. Velasco's motion, finding that she had failed to demonstrate error in the determination that the U visa application had been abandoned. Exhibit 8, Denial of motion to reopen. The Service Center further "noted" that Ms. Velasco's signature was not an original signature and that the motion was filed more than 9 months after the U visa application was denied. Id.

34. No administrative appeal of the Service Center's October 21 decision is available. The immigration regulations state that an applicant can appeal the denial of a motion to reopen to the Administrative Appeals Unit ("AAU") of the USCIS only if the original decision was appealable to the AAU. 8 C.F.R. § 103.5(a)(6). The original decision denying Ms. Velasco's U visa application

was not appealable to the AAU because it was denied for abandonment. 8 C.F.R. § 103.2(b)(15). As such, the denial of Ms. Velasco's motion cannot be appealed to the AAU and constitutes final agency action. See Exhibit 9, AAU decisions finding a lack of jurisdiction over motions to reopen abandonment decisions.

## ARGUMENT

**I. DEFENDANTS SHOULD HAVE REOPENED MS. VELASCO'S U VISA APPLICATION BECAUSE THEY VIOLATED THE IMMIGRATION REGULATIONS IN MAILING THEIR REQUEST FOR ADDITIONAL EVIDENCE.**

35. Defendants provided just one reason for denying Ms. Velasco's motion to reopen. They found that she had "provided no evidence to establish that the decision [to deny the U visa application] was in error in accordance with" the immigration regulations relating to "abandoned" applications. This determination was incorrect. Ms. Velasco's U visa application was denied for abandonment because the Service Center sent her request for additional evidence only to an outdated address for her non-attorney forms preparer. Because this violated the regulations, the Court should find the USCIS's denial of her motion to reopen to be unlawful.

36. The Administrative Procedures Act provides a cause of action to persons "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Under the APA, a reviewing court can "hold unlawful . . . agency action [that is] arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706. In order to bring a cause of action under the APA, the agency decision must be final, and the aggrieved party must have exhausted administrative remedies. 5 U.S.C. § 704.

37. Defendants' denial of Ms. Velasco's motion to reopen was arbitrary and capricious, and an abuse of discretion.

38. The Nebraska Service Center denied Ms. Velasco's U visa application as abandoned. The regulations provide that, where an applicant fails to respond to a request for additional evidence, an application "may be summarily denied as abandoned." 8 C.F.R. § 103.2(b)(13)(i). A subsequent

motion to reopen the denial of an abandoned application must meet one of a number of criteria. Among those is a showing that "[t]he request for additional information . . . was sent to an address other than that on the application, petition, or notice of representation . . ." 8 C.F.R. § 103.5(a)(2).

39. Ms. Velasco's U visa application listed her address as 924 Garden Street, Apartment 102, Bellingham, Washington 98225. Exh. 2. She resided at that address when she filed her U visa application and, although she no longer physically resides there, remains able to receive mail there.

40. The Nebraska Service Center issued a request for additional evidence in Ms. Velasco's case on June 1, 2020. Exh. 3. Rather than mailing the document to Ms. Velasco at the address she provided, though, it mailed the letter to the address provided by Mr. Arens, the non-attorney who signed her U visa application as the preparer. Id.; Exh. 2. Because Mr. Arens had changed his address (and failed to inform either the USCIS or Ms. Velasco of that fact), the letter was returned to the Service Center. Exh. 4. Ms. Velasco never became aware of the request for evidence, and the application was denied as abandoned. Exh. 5.

41. By failing to mail the document to Ms. Velasco, the USCIS sent the request for evidence "to an address other than that on the application, petition, or notice of representation." 8 C.F.R. § 103.5(a)(2)(iii). The regulation contemplates that, where a benefits applicant is represented by an attorney, it might be sufficient to send the request for evidence to the attorney. Id.; 8 C.F.R. § 103.2(b)(19)(ii)(A). However, Mr. Arens is not, and did not claim to be, either an attorney or an accredited representative.[1] The organization at which he worked – Prosperity Services – is not an organization accredited by the Board of Immigration Appeals. Moreover, Mr. Arens did not file form G-28 as Ms. Velasco's representative. Because there was no "notice of representation," and because Mr. Arens is not an attorney, the Service Center should have sent the request for evidence to Ms. Velasco at the address she provided.

---

[1] In addition, Mr. Arens did not qualify to represent Ms. Velasco as a "reputable individual." 8 C.F.R. § 292.1(a)(3). Among other things, he charged Ms. Velasco for his preparation services.

Complaint for Declaratory and
Injunctive Relief
11

Dobrin & Han, PC
705 Second Avenue, Suite 905
Seattle, WA 98104

42. Moreover, even if the agency somehow treated Mr. Arens as an attorney or accredited representative, it should still have sent a copy of the request for evidence to Ms. Velasco. This is because the regulations provide that the USCIS must send notices both to the attorney and to the applicant. 8 C.F.R. § 103.2(b)(19)(ii)(A) (". . . USCIS will send original notices both to the applicant or petitioner and his or her authorized attorney or accredited representative.").

43. Because the Service Center did not send the request for evidence to Ms. Velasco as required by its regulations, its decision to deny her U visa application for abandonment was in error. For the same reason, Defendants engaged in unlawful agency action in denying Ms. Velasco's motion to reopen.

## II. ALTERNATIVELY, DEFENDANTS SHOULD HAVE REOPENED MS. VELASCO'S U VISA APPLICATION BECAUSE THEY VIOLATED HER DUE PROCESS RIGHTS IN DENYING THAT APPLICATION.

44. Alternatively, the Court should find that, in denying Ms. Velasco's U visa application, Defendants failed to provide her reasonable notice of their request for additional evidence and, therefore, violated her due process rights.

45. The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property[] without due process of law."

46. To have a property interest in a benefit, "a person clearly must have more than an abstract need or desire for it." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). The person "must, instead, have a legitimate claim of entitlement to it." Id. Ms. Velasco has established her statutory eligibility for a U nonimmigrant visa and thus has a property interest in that benefit. See 8 U.S.C. § 1101(a)(15)(U). As such, she was entitled to procedural due process in the adjudication of her application.

47. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (internal citations omitted). To comply with due process, the notice "must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance." Id. Moreover, providing notice requires more than "a mere gesture." Id. at 315. "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Id.

48. Ms. Velasco's due process right to reasonable notice of the USCIS's request for additional evidence was violated by the Service Center's procedures. Instead of mailing the request for evidence to Ms. Velasco at the address she provided on her application, the Service Center mailed that request to her non-attorney forms preparer. Within about 10 days, the document was returned as undeliverable to the Service Center by the United States Postal Service. Exh. 4. Despite being on notice that this address was not functional, the Service Center took no other action to try to notify Ms. Velasco of the request for evidence. The agency did not look to the application to find Ms. Velasco's stated address; instead, it did nothing for more than 5 months and then denied the application for abandonment. Exh. 5.

49. Put simply, the Service Center's attempt to notify Ms. Velasco of the additional required evidence was "a mere gesture," and did not comport with due process.

50. In Caplash v. Johnson, 230 F. Supp. 3d 128 (W.D.N.Y. 2017), a United States citizen filed a visa petition on behalf of his non-citizen brother. The petitioner changed his address after filing the petition; instead of notifying the Department of Homeland Security, he submitted a change of address request with the United States Postal Service. Id. at 132. Subsequently, the agency sent documentation, including a notice of transfer and a request for additional evidence, to the petitioner's old address. Id. at 133-34. Both were returned to the agency as undeliverable, but the agency took no further action to try to notify the petitioner of the additional evidence it needed. Id. The agency then denied the petition for abandonment. Id. at 134-35. In sum, the agency "denied [the

1    petitioner's] I-130 petition based on his failure to respond to correspondence that USCIS knew he had never received." Id. at 135.

51.    The court in Caplash noted that, because mail to the petitioner was returned as undeliverable on two occasions, the agency was "specifically aware that [he] would not receive the notice . . ." Caplash, 230 F. Supp. 3d at 140. As such, it held that due process required the agency "to pursue additional reasonable steps to notify [the petitioner of the request for additional evidence] before terminating his pending petition." Id. at 141. Although the court did not specify particular steps that the agency should have taken to notify the petitioner, it suggested that it would have been reasonable for the USCIS to contact the United States Postal Service to obtain the petitioner's mailing address in that agency's database. Id. at 142.

52.    In Ms. Velasco's case, as in Caplash, the USCIS was aware that Ms. Velasco was not able to receive mail at the address provided by Mr. Arens, as the request for evidence was returned to the agency 7 days after it was mailed. Exh. 4. At that time, Ms. Velasco still had more than 70 days to respond to the request for evidence. Exh. 3 (giving Ms. Velasco 84 days to respond). However, the agency took no additional steps to notify her of its request. Moreover, unlike in Caplash, the USCIS had the information it needed in Ms. Velasco's case right at its fingertips: page 1 of her U visa application form listed her address. The agency's failure to, at minimum, resend the request for evidence to Ms. Velasco's mailing address violated her due process right to reasonable notice. The Court should therefore find that the agency's denial of her motion to reopen violated the United States Constitution.

53.    Alternatively, Ms. Velasco's notice argument can be analyzed under a Mathews v. Eldridge framework. In order to determine the process due Ms. Velasco, the Court should consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

54. Here, the balancing test weighs heavily in favor of Ms. Velasco. First, the private interest at stake – Ms. Velasco being granted U nonimmigrant status – is extremely high. Ms. Velasco was the victim of a pattern of serious crimes, and her cooperation with law enforcement led to the perpetrator being convicted of a number of criminal offenses. The U visa was created to provide temporary immigration status to people like Ms. Velasco. Because Ms. Velasco does not have lawful immigration status at this time, the U visa is the difference between her having lawful status in this country and facing removal for not having such status.

55. Second, the government's procedures in Ms. Velasco's case clearly carried a high risk that she would not become aware of the request for evidence. The agency mailed the request for evidence to her non-attorney forms preparer – someone who, by regulation, should not have been notified in the first place. Subsequently, when the USCIS received the returned document from the United States Postal Service, it did nothing. Had it simply mailed the document to the address Ms. Velasco provided on her application, she would have been on notice of the documents required, and she would have been able to provide that evidence within the agency's deadline.

56. Third, the burden to the agency in this case would have been exceptionally small. It need only have resent the request for evidence to the address provided by Ms. Velasco on her application. In fact, had the agency sent the request for evidence to Ms. Velasco in the first place, there would have been no additional administrative burden at all. In any case, the agency could have provided reasonable notice to Ms. Velasco with very minimal additional effort.

57. For all of these reasons, the denial of Ms. Velasco's U visa application violated her due process rights, and the agency's denial of her motion to reopen was unlawful.

**III.     THE ADDITIONAL REASONS NOTED BY DEFENDANTS IN THE MOTION TO REOPEN DENIAL DO NOT PROVIDE A VALID BASIS FOR DENYING THE MOTION.**

58.     In their decision denying Ms. Velasco's motion to reopen, Defendants "noted" two additional points: (1) that Ms. Velasco's signature on the forms was not an original signature; and (2) that the motion was filed almost 10 months after the denial of the U visa application. Exh. 5. Because the agency did not make clear that it relied upon these points in denying the motion to reopen, the Court need not consider them in its review. Assuming that the agency clearly relied upon these points to deny the motion, though, the Court should find that it acted unlawfully in doing so.

59.     A court's review of an agency decision "is limited to the reasoning articulated by the agency . . ." Love Korean Church v. Chertoff, 549 F.3d 749, 754 (9th Cir. 2008), citing SEC v. Chenery Corp., 318 U.S. 80, 87 (1943). "[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." Chenery, 318 U.S. at 94. Thus where an agency's reasoning is not clear, the Court cannot review that reasoning. Id.; see also Recinos De Leon v. Gonzales, 400 F.3d 1185, 1193 (9th Cir. 2005) (remanding where the court "cannot, with any confidence, discern the grounds for the agency's action").

60.     Here, the agency cited the abandonment regulation and stated: "You have provided no evidence to establish that the decision [to deny the U visa application] was in error in accordance with the paragraphs above." Exh. 5. This was a clear and thus reviewable finding. The agency then went on: "Additionally, the following is noted: . . ." and added two additional points. It is not clear, though, if the Service Center actually relied on those points in denying the motion, or if it was just "noting" them. Because of this lack of clarity, the Court's review is restricted to the only reason that the agency clearly provided: Ms. Velasco's alleged failure to show that abandonment was improper.

61.     Assuming, though, that the Court finds that these additional points were reasons upon which the agency relied in denying Ms. Velasco's motion, it should reject those reasons.

62.     First, the agency noted that Ms. Velasco's signature on the forms she filed with the

motion to reopen was not an original signature. Exh. 5. However, that is not a basis to deny a motion to reopen. Beginning on March 20, 2020, the USCIS stated that, due to the COVID-19 National Emergency announced by the then-president, it would "accept all benefit forms and documents with reproduced original signatures . . ." Exhibit 10, "USCIS Announces Flexibility in Submitting Required Signatures During COVID-19 National Emergency," March 20, 2020. This meant that the document could be "scanned, faxed, photocopied, or similarly reproduced provided that the copy [is] of an original document containing an original handwritten signature . . ." Id.

63. The USCIS's policy on reproduced signatures remained in effect in October 2021, when Ms. Velasco submitted her motion to reopen. This is because, on February 24, 2021, President Biden extended the COVID-19 National Emergency. Exhibit 11, "A Letter on the Continuation of the National Emergency Concerning the Coronavirus Disease 2019 (COVID-19) Pandemic," February 24, 2021. See also Exhibit 12, "Signatures," Excerpt from USCIS Policy Manual, Chapter 2 (stating that a reproduced original signature on a benefits application is acceptable **)**.

64. Ms. Velasco's signatures on the motion to reopen and on the notice of attorney representation were faxed reproductions of her original signature. As such, they comported with USCIS policy at the time she filed her motion to reopen.[2]

65. In addition, the lack of an original signature is not a proper basis to deny a motion to reopen. Instead, where the signature is improper, the USCIS rejects the motion and returns it to the applicant, giving that person the opportunity to "resubmit the benefit request with a valid signature." Exh. 12. In Ms. Velasco's case, though, the agency accepted the motion and issued a receipt for it. Exh. 7. It was therefore improper for the agency to subsequently assert that it was denying the motion on that ground.

66. Second, the agency noted that Ms. Velasco filed her motion to reopen nearly 10 months after her U visa application was denied. Exh. 5. It failed to cite to any legal authority to explain why

---

[2] That policy remains in effect at this time.

this was a basis for denial. Id. Moreover, it failed to consider the reasons provided by Ms. Velasco for her delay in filing the motion.[3] Id.

67. Generally, a motion to reopen must be filed within 30 days of the denial decision. 8 C.F.R. § 103.5(a)(1)(i). However, the failure to timely file the motion "may be excused in the [USCIS's] discretion . . . where it is demonstrated that the delay was reasonable and was beyond the control of the applicant . . ." 8 C.F.R. § 103.5(a)(1)(i). Ms. Velasco's U visa application was denied as abandoned on November 13, 2020. Although her motion was filed more than 30 days after the denial decision, the delay in filing the motion was reasonable and was beyond Ms. Velasco's control.

68. As discussed in Section I, supra, the Service Center should have sent the request for evidence to Ms. Velasco at the address she provided on her U visa application form. Because it did not – and because it instead sent the denial decision to Mr. Arens's non-functioning address – Ms. Velasco did not become aware of either the request for evidence or the denial decision until her new attorney obtained a copy of the file pursuant to the Freedom of Information Act. Once she found out that her application had been denied, Ms. Velasco and her attorney rapidly prepared and filed her motion to reopen, which included evidence responsive to the request for evidence. As such, Ms. Velasco's delay was reasonable, and her late-filing of her motion was for a reason beyond her control.

69. For all of these reasons, the additional points "noted" by the agency in denying Ms. Velasco's motion to reopen do not provide a lawful basis for its denial.

---

[3] This lack of analysis provides further support for Ms. Velasco's argument above – that these points "noted" by the agency are nothing more than musings, and certainly not clear reasons for the denial of the motion.

## PRAYER FOR RELIEF

70. WHEREFORE, Plaintiff prays that this Court:

a. Accept jurisdiction over this action;

b. Declare that Defendants' denial of Plaintiff's motion to reopen violated the Administrative Procedures Act or, alternatively, the Due Process Clause of the Fifth Amendment of the United States Constitution;

c. Grant attorneys' fees and costs of court; and

d. Grant such other and further relief as the Court deems just and proper under the circumstances.

Dated: November 24, 2021                    Respectfully Submitted,


/s/ Hilary Han
Hilary Han
Dobrin & Han, PC
Attorneys for Plaintiff

Complaint for Declaratory and
Injunctive Relief                    19                    Dobrin & Han, PC
                                                           705 Second Avenue, Suite 905
                                                           Seattle, WA 98104

# CERTIFICATE OF SERVICE

**RE: <u>Andrea Velasco Gomez v. United States Citizenship and Immigration Services et al.</u>, Agency No. 208-533-350**

I, **Hilary Han**, am an employee of Dobrin & Han, PC. My business address is 705 Second Avenue, Suite 905, Seattle, Washington 98104. I do hereby certify that on **November 24, 2021**, I **will cause to be delivered via certified mail** a true and correct copy of the attached document, described as:

**Complaint for Declaratory and Injunctive Relief**

on the following party(ies):

Office of the United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101

Upon issuance of the summons by the Court, I **will cause to be delivered via certified mail** a true and correct copy of the attached documents to:

Office of the United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101

Loren K. Miller
Director
USCIS Nebraska Service Center
PO Box 82521
Lincoln, NE 68501-2521

Ur M. Jaddou
Director
United States Citizenship and Immigration Services
20 Massachusetts Avenue NW
Washington, D.C. 20001

Alejandro Mayorkas
Secretary
Department of Homeland Security
Washington, D.C. 20528

Merrick Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

Executed in Seattle, Washington, on November 24, 2021.

/s/ Hilary Han
Hilary Han